UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHAUN BRAME,  )
    Plaintiff,  )
  )
v.  )    Case No. 07 C 6969
  )
OFFICER RODRIGUEZ, *et al.*  )    Judge Suzanne B. Conlon
  )
    Defendants.  )

## MEMORANDUM OPINION AND ORDER

Shaun Brame, an inmate at the Cook County jail, sues Cook County jail emergency response team member Rodriguez pursuant to 42 U.S.C. § 1983. Brame alleged that on July 28, 2007, Rodriguez, while attempting to return a number of inmates to their cells, unjustifiably used pepper spray on him. Because of difficulties with serving Rodriguez, the court suggested that Brame file an amended complaint that named not only Rodriguez, but also the supervisory officials who could identify him. Brame then filed an amended complaint against Rodriguez, Cook County Sheriff Tom Dart, Executive Director Salvador Godinez and Superintendent Plaxico.

In addition to alleging that Rodriguez unjustifiably used pepper spray, Brame alleged that Dart, Godinez and Plaxico failed to adopt or enforce policies to prevent officers from using excessive force. Dart, Godinez and Plaxico were served with the amended complaint. Despite efforts by all parties, Rodriguez has never been served.[1] Brame recently filed a motion seeking to dismiss Rodriguez as a defendant. Dart, Godinez and Plaxico move for summary judgment. Brame has also requested leave to file an amended complaint.

---

[1] To assist Brame, Dart, Godinez and Plaxico provided Brame photographs of officers who were working on the day of the incident. Brame identified Cesar Rodriguez, but is not sure Rodriguez was the person who used pepper spray.

# I. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine issue of material fact, the court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Anderson*, 477 U.S. at 252; *Insolia v. Philip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

When addressing a summary judgment motion, the court derives the background facts from the parties' Local Rule 56.1 statements, which assist the court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000).

A litigant's failure to respond to Local Rule 56.1 statements results in the court considering uncontroverted statements as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Also, the court may disregard responses that do not properly cite to the record or that offer only evasive denials. *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). Because Brame appears *pro se*, defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by N.D. Ill. Local Rule 56.2. The notice explains the consequences of failing to properly respond to a summary judgment motion and to statements of material facts under Fed. R. Civ. P. 56(e) and Local Rule 56.1. R. 70-7.

Brame filed several pleadings in response to the summary judgment motion and Rule 56.1 statements. Brame's "Statement" responds to each of defendants' Rule 56.1 statements. R. 80. Brame's "Reply" addresses arguments advanced in defendants' summary judgment motion. R. 93. Defendants filed a reply, addressing Brame's responses to their Rule 56.1 statements, *see* R. 86, as well as a reply to Brame's "Reply." R. 96. Defendants' first reply (R. 86) tracks both their Rule 56.1 statements and Brame's responses.

## II. FACTS

Brame entered the Cook County jail in May 2007. R. 86 at ¶ 2. On July 28, 2007, after inmates refused to be locked in their cells following a search of their cells, emergency response team members were called to the area. *Id.* at ¶ 3-5. Brame testified that he and 47 other inmates on his tier refused to be locked in their cells because they were upset that personal property had been removed from their cells. After an emergency response team unit was called, Brame and all but about 15 to 20 inmates returned to their cells. R. 70-4, Ex. 2, Pl. Dep. at 24-27. About 40 to 45 officers and emergency

response team members attempted to return the remaining inmates to their cells. *Id.* at 32. One of the roles of an emergency response team unit was to handle inmate disturbances. R. 86 at ¶ 7. Brame states he returned to his cell before the officers and emergency response team members arrived. R. 70-4, Ex. 2, Pl. Dep. at 31. Brame stood in the doorway of his cell as officers attempted to return inmates to their cells. *Id.* at 34. An officer approached Brame and ordered him at least twice to get out of the doorway. R. 86 at ¶ 8. As Brame explained in his deposition, he responded to the officer's first order by asking why he had to move further back in his cell if he was not causing problems. The officer again ordered Brame to get away from the door. He refused. R. 70-4, Ex. 2, Pl. Dep. at 34-35. Brame and the officer continued "talking about me getting out of the door." *Id.* at 35. At that point, another officer or an emergency response team member, possibly Cesar Rodriguez, approached and sprayed him with pepper spray. *Id.;* R. 29; Amended Compl. at p.7; R. 95.

On August 18, 2007, Brame filed a grievance about the incident. R. 86 at ¶ 9. In September 2007, Brame received a response that an Internal Affairs investigation had been opened. *Id.* at ¶ 11. Brame did not appeal the response to his grievance. Instead, he filed another grievance about the pepper-spray incident on October 19, 2007. *Id.* at ¶ 14. The October 2007 grievance was processed as a request. Brame was informed he was not allowed to obtain information on the Internal Affairs investigation, but the information could be given to his attorney. *Id.* at ¶ 15. After Brame initiated this suit in December 2007, he filed another grievance on April 11, 2008, also processed as a request. Brame received a response that referred him to the September 2007 response to his August 2007 grievance. *Id.* at ¶¶ 16-18. Brame filed no other grievances. *Id.* at ¶ 19.

At the time of the July 28, 2007 incident, Cook County jail had in effect several policies and orders pertaining to an officer's use of force, including the use of pepper spray. *Id.* at ¶¶ 21-23.

GENERAL ORDER 9.16, Security and Control, Use of Force

> H.  Use of Non-Lethal Weapons/Techniques
>
> . . .
>
> 2.  Oleoresin Capsicum (O.C.) Spray (Pepper Spray)
>
>> Oleoresin Capsicum Spray will be used only when an individual exhibits behavior which shows intent to actively resist or attack the Peace Officer or to prevent injury to another person. The use of Oleoresin Capsicum Spray is not regarded as use of force that would result in great bodily harm.

R. 70-5, Def. Memo., Ex. 3, General Order 9.16.

> GENERAL ORDER 9.17 Security and Control, The Use of Oleoresin Capsicum (O.C.) Spray
>
> III.  Procedures
>
> . . .
>
> D.  Except in emergency situations, the user must give three (3) concise warnings before administering O.C. Spray.

*Id.* at Ex. 3, General Order 9.17.

Brame never spoke with Dart, Godinez or Plaxico. However, he contends they were made aware of the incident by his grievances and the Internal Affairs investigation. R. 86 at ¶¶ 25-29. Brame acknowledges there is no jail policy promoting the use of force by jail officers, but he contends there is a common practice of "looking the other way." *Id.* at ¶ 31.

### III.  DISCUSSION

Brame seeks to dismiss Rodriguez as a defendant. After several attempts, Brame cannot positively identify Rodriguez as the officer who sprayed him on July 28, 2007. R. 96. Given his inability to identify the officer, Brame's motion to dismiss Rodriguez is granted. Brame seeks to pursue his claims against Dart, Godinez and Plaxico. Dart, Godinez, and Plaxico argue in their summary judgment motion that Brame failed to exhaust administrative remedies and that the record evidence

demonstrates he cannot establish liability against them. Because the record shows defendants are entitled to judgment on the merits of Brame's claims, the court need not address the failure to exhaust issue.[2]

The essence of Brame's claims against Dart, Godinez and Plaxico is that they ignored the problem of use of excessive force by Cook County jail officers. Specifically, Brame alleges Dart failed to execute policies to properly train officers, Godinez failed to enforce policies, and Plaxico failed to maintain adequate staff to handle inmate situations. R. 24, Amended Compl. at ¶¶ 21-23. In response to these allegations, defendants submit copies of the jail's policies regarding when, and to what degree, force may used by officers against inmates. R. 70, Def. Mem. at Ex. 3. Defendants also submit Brame's deposition testimony that he never spoke to Dart, Godinez or Plaxico about officers' use of force against inmates. R. 70-4, Ex. 2, Pl. Dep. at 49-55. Brame responds there was a custom of ignoring officers' use of excessive force at the jail. In support, he refers to a Department of Justice ("DOJ") report from July 2008 he submitted in another case. R. 93, 5. The report discusses instances of excessive force at the jail. *See Brame v. Dart*, No. 09 C 3966, R. 86, Ex. 1 (copy of DOJ report).

Brame seeks to hold defendants liable in both their individual and official capacities. To hold them liable in their individual capacities, he must show they were personally aware of a dangerous situation at the jail but failed to take action to correct the situation. The doctrine of respondeat superior does not apply to § 1983 claims, and supervisors are not liable for the unconstitutional acts of subordinates. "[S]upervisors who are merely negligent in failing to detect and prevent subordinates'

---

[2] Defendants contend Brame failed to exhaust administrative remedies because he did not appeal the September 2007 response to his grievance. However, that response informed him that an Internal Affairs investigation was opened. It is unclear if he had to appeal if he was satisfied with the response. The court need not address the exhaustion issue because defendants are entitled to summary judgment on the merits.

misconduct are not liable. . . . The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citation omitted).

To hold defendants liable in their official capacities, Brame must establish that the use of excessive force was the result of an official policy or custom. Actions against individual defendants in their official capacities are treated as suits against the government entity itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Monell v. Department of Social Services of New York City*, 436 U.S. 658, 694 (1978). A governmental unit is not liable under § 1983 unless the constitutional violation was caused by its own policy or custom. *Kujawski v. Bd. of Comm'rs of Bartholomew County*, 183 F.3d 734, 737 (7th Cir.1999); *Monell*, 436 U.S. at 694. A policy or custom may be shown by: (1) an express policy that, when enforced, caused a constitutional violation; (2) a widespread practice that amounted to a "custom or usage" causing constitutional injury; or (3) a decision by a person with final policymaking authority that resulted in the constitutional injury. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008); *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004), *cert. denied*, 543 U.S. 811 (2004).

Before Brame can establish liability against defendants in either their individual or official capacities, he must establish he was the victim of excessive force. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997), *cert. denied*, 522 U.S. 1116 (1998) (supervisory officials cannot be held liable for ignoring an excessive force problem or for an unconstitutional custom or policy "absent a finding that the individual [ ] officers are liable on the underlying substantive claim"). Here, the evidence demonstrates that, given the situation, the force used against Brame was not constitutionally excessive.

According to Brame's deposition, on July 28, 2007, he and about 47 other inmates were upset when they returned to their tier and found that personal property had been removed from their cells. R. 70-4, Ex. 2, Pl. Dep. at 24-25. The inmates refused to enter their cells and demanded to speak to officials. *Id.* At that time, only two officers were with the inmates. *Id.* at 25. After a sergeant came to the tier, the inmates were again ordered to lock up in their cells. Again they refused. An emergency response team unit was called to handle the situation. Brame and all but about 20 inmates returned to their cells before the emergency response team unit arrived. *Id.* at 25-27. When officers arrived, Brame stood in the doorway of his cell, possibly with the door closed but visible through a large open window of the door. *Id.* at 27-28. An officer told him to get away from the doorway of his cell. Brame refused, asking why since he was not causing any problems. *Id.* at 34. The officer again ordered Brame to move back. He again refused. *Id.* at 34-35. Brame and the officer continued discussing Brame moving back in his cell. He remained in the doorway. *Id.* at 35. At that time, another officer (the dismissed defendant referred to as Rodriguez), overhearing the exchange between Brame and the first officer, approached and sprayed pepper spray in Brame's cell and at Brame. *Id.* While using pepper spray, the officer told him, "get out of the door, get out of the door." *Id.* at 37-38. Brame rinsed his eyes, asked for medical assistance, and used his asthma inhaler. *Id.* at 39. Brame experienced pain and discomfort for about a day, as well as a "minor asthma attack." *Id.* at 39-40. At the time Brame was sprayed, officers were still attempting to get inmates into their cells. *Id.* at 39.

Although the use of pepper spray is serious, use of a chemical agent that is necessary "to subdue recalcitrant prisoners does not constitute cruel and unusual punishment" and is not considered excessive force. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984), *cert. denied*, 470 U.S. 1085 (1985); *Hollgarth v. Dawson*, No. 05 C 2125, 2007 WL 2812151, at *13 (C.D. Ill. Sept. 19, 2007) (McCuskey,

Page 8 of 12

J.). "The use of chemical spray in small amounts where a prisoner has failed to obey a direct order is a reasonable response to a legitimate security concern." *Hollgarth*, 2007 WL 2812151, 13. This court has posed the following question when determining whether the force used amounted to unconstitutionally excessive: "Was the force used in a good faith effort to maintain or restore discipline or was it used maliciously and sadistically with the purpose of causing harm?" *Cooper v. Schomig*, No. 95 C 6989, 1997 WL 94735, at *2 (N.D. Ill. Feb. 28, 1997) (Moran, J.) (citing *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986)).

The answer to that question in this case is that pepper spray was not used to punish or to cause harm, but rather to restore order. Numerous inmates were upset and refusing to return to their cells. Emergency response team officers were called to handle the situation. Although Brame entered his cell, he refused several direct orders to move back away from the door while officers were still attempting to get inmates into their cells. A quantity of pepper spray was used that caused pain and irritation lasting at most a day and a minor asthma attack. Brame immediately used his inhaler. These facts do not support a claim of excessive force.[3] Because the underlying incident was not one involving excessive force, Brame cannot succeed on his claims against defendants in their individual or official capacities.

Even if there is an issue of fact whether the use of pepper spray in this case constituted excessive force, the summary judgment record demonstrates that Brame cannot establish that such use of force

---

[3] Although the jail's General Order 9.17, Section III. D. states that an officer should give three concise direct orders before using pepper spray, the three warnings rule does not apply to emergencies, as in this case. Whether the force used was constitutionally unreasonable is not determined by internal rules, but rather by federal law. *Fuller v. Dillon*, 236 F.3d 876, 880 (7th Cir. 2001), *cert. denied*, 532 U.S. 1072 (2001) (officer's failure to follow a prison rule is not itself a constitutional violation).

was caused by an unconstitutional policy or custom. To establish liability against supervisory officials, he must show their actions or a policy or custom "directly caused" his injury. *Frake v. City of Chicago*, 210 F.3d 779, 781 (7th Cir. 2000); *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008).

Defendants submitted with their summary judgment motion General Orders 9.16 and 9.17. General Order 9.16, executed on September 2, 2002, provides that pepper spray "will be used only when an individual exhibits behavior, which shows intent to actively resist or attack the Peace Officer." R. 70, Def. Memo., Ex. 3, General Order 9.16, VI, H.(2). General Order 9.17, executed on September 29, 2006, specifically addresses the use of pepper spray. Only sergeants or higher-ranked officers are authorized to carry pepper spray, as well as emergency response team level 3 or 4 personnel. *Id.* at Ex. 3, General Order 9.17, II. B. General Order 9.17 further states that "[e]xcept in emergency situations, the user must give three (3) concise warnings before administering O.C. spray." *Id.*, General Order 9.17, III. D.

The record reflects there were jail policies addressing the use of force by officers, and that one general order specifically addressed the use of pepper spray. Brame argues that a DOJ report released in 2008 indicates that jail authorities ignored many incidences of excessive force and allowed that conduct to continue, despite the jail's general orders. R. 93, Pl. Reply at 5. Brame does not provide a copy of the report, but rather refers to his submission in another case pending before this court. *Id.* (citing *Brame v. Dart*, No. 09 C 3966, docket entry 86.) It is not clear whether Brame may adopt the report by reference. But, assuming he may, the 2008 DOJ report does not address the situation here.[4]

---

[4] Defendants challenge the admissibility of the report. "[A] court may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The report's admissibility appears to be governed by Fed. R. Evid. 803(8)(C), which states that an exception to the hearsay rule exists for "factual findings resulting
(continued...)

The DOJ report was released in July 2008, after the July 28, 2007 incident giving rise to this suit. Brame cannot rely on the report to establish that defendants failed to take any corrective measures after learning of the report. The report may only serve to establish that use of excessive force was so common that it amounted to an unconstitutional custom that defendants failed to address. The report does not establish an unconstitutional custom with respect to this case. Although the DOJ report states that officers at the Cook County jail often used excessive force in response to verbal altercations and for an inmate's failure to follow instructions, none of the occasions cited in the report involved the use of pepper spray or, more importantly, situations where officers were attempting to restore order with a number of recalcitrant inmates. *See Brame*, No. 09 C 3966, Docket Entry 86, 9-18. Additionally, the report indicates that senior jail management officials had taken steps to address the issue of excessive force. *Id.* at 10.

The summary judgment record shows that general orders were issued providing specific instructions on when and how pepper spray may be used. Brame's citation to the DOJ report submitted in another case does not address the issue of the use of pepper spray when attempting to control a significant number of inmates. "[W]hen confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988); *see also Roger Whitmore's Auto. Services, Inc. v. Lake County, Illinois*, 424 F.3d 659, 669 (7th Cir. 2005). Brame has not done

---

⁴(...continued)
from an investigation made pursuant to authority, granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Defendants contend the DOJ report is untrustworthy because it "served as a catalyst for settlement discussions." R. 96, Def. Reply at 5-6. Defendants cite no support. However, assuming the DOJ is admissible, it does not counter the summary judgment evidence.

so in this case. The evidence demonstrates that he was not subjected to excessive force and that even if the July 28, 2007 incident constituted excessive force, defendants had adopted policies addressing the use of force and specifically the use of pepper spray.

## IV. CONCLUSION

Brame's motion to dismiss Rodriguez as a defendant [95] is granted. Brame's motion to submit an amended complaint [100] is denied. Defendants' motion for summary judgment [69] is granted. All other pending motions are denied as moot.

ENTER: _____
Suzanne B. Conlon
**United States District Court Judge**

**DATE: November 19, 2010**